IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN RUSSELL HOWALD,<br><br>Defendant. | CV-21-04-H-BMM<br><br>**ORDER** |

**INTRODUCTION**

Defendant John Russell Howald ("Howald") faces the following two charges: (1) Hate Crime Acts, in violation of 18 U.S.C. § 249(a)(2), the Hate Crimes Prevention Act ("HCPA" or "§ 249(a)(2)"); and (2) Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 1; Doc. 72.) Both charges concern a sexual-orientation-based hate crime Howald allegedly committed on March 22, 2020, in Basin, Montana. (Doc. 72 at 2–4.) Howald filed a Motion to Dismiss (Doc. 29) and a Motion in Limine (Doc. 31) on October 8, 2021. The Government filed a Superseding Indictment on December 12, 2022. (Doc. 72.) The Court conducted a motion hearing on December 19, 2022. (Doc. 79.)

## FACTUAL AND LEGAL BACKGROUND

Howald lives in Basin, Montana. Howald allegedly undertook a "self-described mission" on March 22, 2020, to rid the town of Basin of its LGBTQ+ community. (Doc. 41 at 3.) Howald armed himself with three semi-automatic rifles and open-carried them to the home of K.J., a lesbian woman in Basin. (Doc. 72 at 2–4.) Howald allegedly fired at least seven shots at K.J.'s home using an AK-47 style rifle. (Doc. 41 at 3–4.) Police later recovered one bullet from inside K.J.'s home and located bullet holes in her fence, yard, deck, and house. (*Id.* at 4.) The Government asserts that Howald attempted to kill K.J. because of her sexual orientation. (Doc. 72 at 5.)

A bystander recorded on their cell phone an eight-minute rant from Howald immediately after the incident. (Doc. 41 at 17.) Howald made numerous derogatory and incriminating statements during the phone recording. These statements included that Howald sought to "get rid of the fuckin' lesbians, and . . . fuckin' queers;" that he "might have killed a fucking lesbian, I hope;" and that "they are going to die, they are going to leave, and it's gonna be awesome again." (Doc. 72 at 3–4.)

Law enforcement arrived on the scene after receiving multiple 9-1-1 calls. (*Id.* at 4.) Howald fled from the scene after pointing a rifle at a responding officer. (*Id.*) Law enforcement stopped Howald's car and arrested him the following day,

on March 23, 2020. (*Id.*) Law enforcement executed search warrants on Howald's vehicle and camper and found the following firearms and ammunition: a loaded Smith & Wesson .41 caliber revolver, a loaded AR-style 5.56 caliber rifle, an AK-style 7.62x39mm caliber with two banana clips, a Mossberg 30-06 caliber rifle with scope, two empty Tulammo 7.62x39mm caliber ammunition boxes, and one empty Barnes .41 caliber magazine box. (*Id.*)

Howald's arraignment took place on June 29, 2021. (Doc. 10.) The Government provided discovery to Howald on July 1, 2021. (Doc. 42 at 3.) Howald filed a Motion to Dismiss (Doc. 29) on October 8, 2021, that asks the Court to dismiss both counts of the Indictment. Howald argues that § 249(a)(2) reflects an unconstitutional extension of Congressional authority under the Commerce Clause. Howald filed a Motion in Limine (Doc. 31) on October 8, 2021, that seeks to exclude evidence of prior bad acts under F.R.E. 401, 402, and 403. The Court determined that Howald was competent to proceed following a competency hearing conducted on September 26, 2022. (Doc. 65.)

## LEGAL STANDARD

I. **Howald's Motion to Dismiss for Lack of Jurisdiction.**

In evaluating a motion to dismiss pursuant to Rule 12 of the Federal Rules of Criminal Procedure, a court must view the factual allegations in the indictment as true and decide only those issues capable of resolution without invading the

province of the trier of fact. *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).

## II. Howald's Motion in Limine.

A motion in limine constitutes "a procedural mechanism to limit in advance testimony or evidence" before it is presented to the jury. *U.S. v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009). A district court possesses broad discretion to make evidentiary rulings to facilitate a fair and orderly trial. *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996). Such rulings do not bind a trial judge, who may change their mind during the course of trial. *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## DISCUSSION

## I. Howald's Motion to Dismiss for Lack of Jurisdiction.

Howald argues that § 249(a)(2) proves unconstitutional on its face and as applied to him. Howald also contends that Count II of the Indictment, alleging violation of 18 U.S.C. § 924(c), must be dismissed because it derives jurisdiction from a § 249(a)(2) predicate offense.

### A. Whether § 249(a)(2) is Facially Unconstitutional.

A facial challenge to a federal statute must overcome the presumption that all statutes passed by Congress are constitutional. *United States v. Morrison*, 529 U.S. 598, 607 (2000). "Proper respect for a coordinate branch of the government"

requires that a federal court may strike down an Act of Congress only if "the lack of constitutional authority to pass [the] act in question is clearly demonstrated." *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (quoting *United States v. Harris,* 106 U.S. 629, 635 (1883)).

Facial challenges are "to be discouraged" because they "carr[y] too much promise of 'premature interpretation of statutes' on the basis of factually barebones records." *Sabri v. United States*, 541 U.S. 600, 608–09 (2004) (internal quotation marks omitted). A plaintiff lodging a facial challenge typically must establish "that no set of circumstances exists under which [the challenged statute] would be valid," or that the statute lacks any "plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citations omitted).

Howald contends that Congressional expansion of § 249(a)(2) to reach hate crimes motivated by bias against protected categories other than race violates the Commerce Clause. (Doc. 30 at 5, 15.) Howald analogizes § 249(a)(2) to the school gun control provision invalidated in *United States v. Lopez* and the civil remedy provision of the Violence Against Women Act overturned in *Morrison*. 514 U.S. 549, 557 (1995); 529 U.S. at 607. Howald asserts that § 249(a)(2), as with the statutes in *Lopez* and *Morrison*, impermissibly regulates non-economic activity. (Doc. 30 at 6–8.) Howald argues that the jurisdictional element in § 249(a)(2) fails to establish a sufficiently substantial effect on interstate commerce. (*Id.* at 11–14.)

5

The Government argues that the presence of an explicit jurisdictional element in § 249(a)(2) distinguishes § 249(a)(2) from the statutes at issue in *Lopez* and *Morrison*. (Doc. 41 at 11–12.) The Government asserts that the jurisdictional element's required nexus to interstate or foreign commerce renders § 249(a)(2) a valid exercise of Congress's Commerce Clause power. (*Id.* at 9–10.)

The Court must confine its analysis of the facial constitutionality of § 249(a)(2) to an evaluation of whether Congress had a "rational basis" to "conclud[e] that a regulated activity sufficiently affect[s] interstate commerce." *Lopez*, 514 U.S. at 557. The Court agrees that the presence of § 249(a)(2)'s jurisdictional element distinguishes it from the invalidated statutes in *Lopez* and *Morrison*. The U.S. Supreme Court in *Lopez* specified that "[t]he inclusion of an explicit jurisdictional element "ensure[s], through a case-by-case inquiry, that the [violation] in question affects interstate commerce." *Lopez*, 514 U.S. at 561; *United States v. Latu*, 479 F.3d 1153, 1157 (9th Cir. 2007). Howald conceded during the December 19, 2022, motion hearing that he could not identify any valid case in which a federal court had invalidated a federal criminal statute containing an interstate commerce jurisdictional element.

Federal courts uniformly have upheld criminal statutes that regulate items traveling in interstate commerce on the basis that they contain similar jurisdictional elements to that in § 249(a)(2)(B). The U.S. Supreme Court in *Scarborough v.*

6

*United States* determined that an illegally possessed firearm that previously had traveled in interstate commerce satisfied the constitutional nexus requirement. 431 U.S. 563, 577 (1977).

The Ninth Circuit rejected a constitutional challenge to a statute that prohibited people with felony convictions from possessing body armor that had traveled in interstate commerce. *United States v. Alderman*, 565 F.3d 641, 648 (9th Cir. 2009). *Alderman* concluded that the body armor statute contained a "nearly identical jurisdictional hook" to that "blessed by the Supreme Court" in *Scarborough*. *Id.* (citing *Scarborough*, 431 U.S. at 577). The Ninth Circuit recently rejected another constitutional challenge to a statute criminalizing the possession of firearms and ammunition by people who have prior felony convictions. *United States v. Standard*, 849 F. App'x 649, 651–52 (9th Cir. 2021) (citing *Alderman*, 565 F.3d at 648).

The Court determines that the jurisdictional element contained in § 249(a)(2) renders the statute constitutional on its face based on binding U.S. Supreme Court and Ninth Circuit precedent. *Scarborough*, 431 U.S. at 577; *Alderman*, 565 F.3d at 648. The Court additionally recognizes that bias-motivated violence itself impacts interstate commerce. As the Government highlights, violence against people based upon their actual or perceived religion, gender, race, or sexual orientation "creates an atmosphere of fear that affects interstate commerce." (Doc. 41 at 17.) Congress

enacted the HCPA with this connection in mind. Congress expressly found that bias-motivated violence against "members of targeted groups [] impede[s] their freedom of movement," forces members of these communities "to move across State lines to escape the incidence of risk of such violence," and prevents them from "purchasing goods and services, obtaining or sustaining employment, or participating in other commercial activity." HCPA § 2(6)(A),(B).

The Court "readily determine[s]" that a rational basis exists to conclude that bias-motivated violence against members of a protected class using a firearm that has traveled in interstate commerce exerts a substantial effect on interstate commerce in the aggregate. *United States v. Hill*, 927 F.3d 188, 203 n.6 (4th Cir. 2019) ("*Hill III*") (internal citations omitted). Section 249(a) proves constitutional on its face. U.S. Const. art. 1, § 8, cl. 3; *Stevens*, 559 U.S. at 472. The Court will proceed to consider whether §249(a)(2) proves constitutional as applied to Howald.

### B. Whether § 249(a)(2) is Unconstitutional as Applied to Howald.

An as-applied challenge, in contrast to a facial challenge, requires a court to analyze the facts of a particular case. A court must determine "whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006) (citing *Wis. Right to Life, Inc. v. FEC*, 546 U.S. 410, 411 (2006)). A "statute may be invalid as applied to one state of facts and yet

8

valid as applied to another." *Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 329 (2006) (quoting *Dahnke–Walker Milling Co. v. Bondurant,* 257 U.S. 282, 289 (1921)) (internal quotation marks omitted).

Howald argues that Section 249(a)(2) is unconstitutional as applied to him because the jurisdictional basis for Howald's § 249(a)(2) charge exceeds Congress's authority under the Commerce Clause. (Doc. 30 at 5.) The Government maintains that Section 249 is constitutional as applied to Howald on the basis that Howald's alleged conduct involved use of a firearm that had traveled in interstate commerce. (Doc. 41 at 4.)

The Government additionally emphasizes that violence against persons based upon protected categories affects interstate commerce because it limits the freedom of movement of targeted groups and can force people to move across state lines to escape bias-motivated violence. (*Id.* (citing 34 U.S.C. § 30501).) The Government contends that Howald's alleged conduct qualifies as the type of animus-motivated violence that impacts inter-state commerce. (Doc. 41 at 17.)

Only Fourth Circuit has considered the constitutionality of the HCPA as applied to a criminal defendant. The Fourth Circuit concluded that "the [HCPA] easily falls under Congress's broad authority to regulate interstate commerce." *Hill III*, 927 F.3d at 193. Hill, the defendant, faced a § 249(a)(2) charge for assaulting a co-worker at an Amazon warehouse on the basis of his perceived sexual

orientation. *United States v. Hill*, 182 F. Supp. 3d 546, 548 (E.D. Va. 2016) ("*Hill I*"), *rev'd and remanded,* 700 F. App'x 235 (4th Cir. 2017) ("*Hill II*"). The *Hill* line of cases proves instructive despite deriving jurisdiction from a different provision of § 249(a)(2) than the provision at issue in Howald's HCPA charge. The Government in *Hill* asserted jurisdiction pursuant to § 249(a)(2)(B)(iv)(I) on the basis that Hill's assault "interfere[d] with commercial or other economic activity in which the victim [was]engaged at the time of the conduct." *Hill I*, 182 F. Supp. 3d at 554–55.

Hill leveled both facial and as-applied constitutional challenges to § 249(a)(2). *Id.* at 555. The district court twice held—and the Fourth Circuit twice reversed—that § 249(a)(2) proved unconstitutional as applied to Hill. *Hill II*, 700 F. App'x at 255–56; *Hill III*, 927 F.3d at 210. The district court expressed particular concern about "effectively federaliz[ing] commercial property" and permitting Congress to regulate "violence based on discriminatory animus [that] has no connection to the commercial nature of the premises." *Hill I*, 182 F. Supp. 3d at 555.

*Hill III* concluded that Hill's § 249(a)(2) prosecution for assault of his co-worked based on anti-LGBTQ+ bias passed constitutional scrutiny because the assault "interfered with ongoing commercial activity." *Id.* at 205. The Fourth Circuit noted that its decision to uphold the constitutionality of § 249(a)(2) as

applied to Hill "in no way usurps the States' authority to regulate violent crimes—including hate crimes—unrelated to ongoing interstate commerce." *Id.* at 205.

The Court deems Section 249(a) to be constitutional as applied to Howald. Howald's HCPA prosecution derives jurisdiction from § 249(a)(2)(B)(iii), which provides that the defendant must have "employ[ed] a firearm . . . or other weapon that has traveled in interstate or foreign commerce" in connection with the bias-motivated conduct. Howald's indictment specifically alleges that Howald used a firearm that had traveled in interstate commerce in commission of the charged offense and that his conduct "otherwise affected interstate commerce." (Doc. 72 at 3.) The AK-style assault rifle found in Howald's possession included components manufactured in Romania. (Doc. 41 at 4.) The ammunition used in the alleged offense was manufactured in Russia. (*Id.*)

The Government will bear the burden at trial of proving beyond a reasonable doubt that Howald employed a firearm that has traveled in interstate or foreign commerce in connection with the bias-motivated offense or that Howald's conduct "otherwise affected interstate commerce." § 249(a)(2)(B)(iii), (iv)(II). The Court's rejection of Howald's as-applied challenge "in no way usurps the States' authority to regulate violent crimes—including hate crimes—unrelated to ongoing interstate commerce." *Hill III*, 927 F.3d at 205. The Court declines to address whether the impact of bias-motivated violence itself on interstate commerce would suffice to

11

establish jurisdiction over Howald in light of the determination that the jurisdictional element defeats Howald's as-applied challenge to § 249(a)(2),.

Howald's facial and as-applied constitutional challenges to § 249(a)(2) fail. The Court will deny Howald's Motion to Dismiss for Lack of Jurisdiction (Doc. 29).

## II.     Howald's Motions in Limine.

F.R.E. 401 provides that evidence is relevant if it has any tendency to make a fact "of consequence to determining the action" more probable than without the evidence. Irrelevant evidence is never admissible. F.R.E. 402. A court may exclude relevant evidence where "its probative value is substantially outweighed by a danger of . . . unfair prejudice." F.R.E. 403.

Howald asserts that certain prior bad acts of his should be excluded as irrelevant under F.R.E. 401 and 402. (Doc. 32 at 4.) Howald has two previous felony convictions in state court: (1) felony criminal endangerment and felony aggravated animal cruelty (2006, carrying a two-year sentence); and (2) felony criminal endangerment (2021, carrying a 10-year sentence with 5 years suspended). (Doc. 42 at 5.) The first conviction involved a camping trip during which Howald shot and beheaded the neighboring campers' dog following an argument. (Doc. 32 at 2–3.) The second conviction concerns the same underlying conduct as Howald's current federal criminal indictment. (Doc. 42 at 10.)

12

Discovery provided to Howald additionally references a 2018 incident in which Howald returned to a bar in Basin, Montana, after being asked to leave, allegedly after behaving in a threatening manner while in possession of a firearm. (Doc. 32 at 3.)

Howald specifically asks the Court to exclude his 2006 felony conviction and underlying conduct, the 2018 bar incident, and "[a]dditional incidents referenced by witnesses." (*Id.*) Howald's Motion in Limine also mentions "[a]dditional incidents referenced by various witnesses" listed in discovery materials. (*Id.*) Howald asserts that these acts prove irrelevant to the charged offenses. (*Id.*) Howald argues in the alternative that the prior bad acts would be "wildly prejudicial" and must be excluded under F.R.E. 403 should the Court determine that this evidence to be relevant. (*Id.*)

The Government maintains that its concessions have rendered moot Howald's arguments about prior bad acts. The Government has confirmed that it does not intend to offer evidence in its case-in-chief of the 2006 animal cruelty case, Howald's past encounters with the Jefferson County's Sheriff Office, or Howald's previous felony convictions. (*Id.* at 7–8.) The Government asserts that Howald's arguments about impeachment via previous convictions are moot on the basis that Howald's 2006 conviction is more than 10 years old. (*Id.* at 9–10.) The Government has stated that it does not intend to use this conviction for

13

impeachment if Howald were to testify at trial. (*Id.*) Howald's 2021 state conviction relates to same conduct as the current federal indictment. The Government similarly does not intend to use this conviction for impeachment. (*Id.* at 10.)

The Government separately contends that the Court should not exclude potential cross-examination evidence. (*Id.* at 12.) The Government argues that Howald would waive his Fifth Amendment privilege for matters relevant to his direct testimony were he to testify at trial. *United States v. Black*, 767 F.2d 1334, 1341 (9th Cir. 1985) (citing *Brown v. United States*, 356 U.S. 148, 154–56 (1958)).

The Government additionally argues that the Court should not exclude evidence relevant to bias or animus. Such bias or animus evidence would provide direct evidence of motive, which constitutes an element of Count I of the indictment. Element two of Section 249(a)(2) requires that "the defendant acted because of the actual or perceived sexual orientation of the victim." 18 U.S.C. § 249(a)(2).

The Government argues in the alternative that the Court should admit bias or animus evidence under F.R.E. 404(b) as extrinsic acts evidence. Evidence of extrinsic acts proves admissible under Rule 404(b) whenever relevant to an issue other than a defendant's "criminal propensity." *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000). The 404(b) analysis contains the following requirements:

(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that Howald committed the other act; and (4) in some cases, the act is similar to the offense charged. *Id.*

The Government argues that evidence of Howald's animus or bias qualifies under 404(b) for the following reasons: (1) Howald's past derogatory comments and animus toward LGBTQ+ individuals are relevant to proving his motive; (2) the acts are not too remote in time because witness testimony will illustrate Howald's "ongoing course of conduct" leading up to the incident; and (3) witness testimony about Howald's anti-LGBTQ+ animus, in combination with other evidence, supports a finding that Howald committed the charged offenses. (Doc. 42 at 18–21.)

The Court will grant Howald's Motion in Limine (Doc. 31) to the extent that the Government has confirmed that it will not seek to introduce in its case-in-chief evidence of the following prior bad acts: (1) Howald's 2006 state-court conviction for felony aggravated animal cruelty and underlying conduct; (2) Howald's 2021 state-court conviction for felony criminal endangerment; and (3) the 2018 incident at a bar in Basin, Montana. The Government shall seek permission from the Court should it seek to use either of Howald's past felony convictions or the 2018 bar incident as impeachment evidence.

The Court will defer judgment regarding the admissibility of cross-examination evidence should Howald choose to testify. The Court also will defer judgment on the admissibility testimony from the Government's intended witnesses as intrinsic evidence of Howald's motive, an element of the charged offense, 18 U.S.C. § 249(a)(2). *United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003); *United States v. McInnis*, 976 F.2d 1226, 1230 (9th Cir. 1992). The parties shall confer regarding the scope and content of the testimony of the Government's intended witnesses. The parties shall inform the Court if they are unable to resolve any disputes as to admissibility of Government witness testimony.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Howald's Motion to Dismiss (Doc. 29) is **DENIED.**

2. Howald's Motion in Limine (Doc. 31) is **GRANTED IN PART and DENIED IN PART.**

DATED this 3rd day of January, 2023.

_____
Brian Morris, Chief District Judge
United States District Court