IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOHN RUSSELL HOWALD,<br><br>　　　　　Defendant. | CR-21-04-H-BMM<br><br>**ORDER** |

**INTRODUCTION**

The Superseding Indictment charges Defendant John Russell Howald ("Howald") with the following two crimes: (1) Hate Crime Acts, in violation of 18 U.S.C. § 249(a)(2), the Hate Crimes Prevention Act ("HCPA" or "§ 249(a)(2)"); and (2) Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 1; Doc. 72.) Both charges arise from a sexual-orientation-based hate crime Howald allegedly committed on March 22,

2020, in Basin, Montana. (Doc. 72 at 2–4.) Howald filed a second Motion to Dismiss Count II on December 23, 2022. (Doc. 81.) The Court conducted a motion hearing on January 18, 2023. (Doc. 79.)

## FACTUAL AND LEGAL BACKGROUND

Howald lives in Basin, Montana. The Government alleges that Howald undertook a "self-described mission" on March 22, 2020, to rid the town of Basin of its LGBTQ+ community. (Doc. 41 at 3.) Howald armed himself with three semi-automatic rifles and open-carried them to the home of Individual 1, a lesbian woman in Basin. (Doc. 72 at 2–4.) Howald allegedly fired at least seven shots at Individual 1's home using an AK-47 style rifle. (Doc. 41 at 3–4.) Police recovered one bullet from inside Individual 1's home and located bullet holes in her fence, yard, deck, and house. (*Id.* at 4.) The Government asserts that Howald attempted to kill Individual 1 because of her sexual orientation. (Doc. 72 at 5.)

A bystander recorded on their cell phone an eight-minute rant from Howald immediately after the incident. (Doc. 41 at 17.) Howald made numerous derogatory and incriminating statements during the phone recording. These statements included that Howald sought to "get rid of the fuckin' lesbians, and . . . fuckin' queers;" that he "might have killed a fucking lesbian, I hope;" and that "they are going to die, they are going to leave, and it's gonna be awesome again." (Doc. 72 at 3–4.)

2

Law enforcement arrived on the scene after receiving multiple 9-1-1 calls. (*Id.* at 4.) Howald fled from the scene after pointing a rifle at a responding officer. (*Id.*) Law enforcement stopped Howald's car and arrested him the following day, on March 23, 2020. (*Id.*) Law enforcement executed search warrants on Howald's vehicle and camper and found the following firearms and ammunition: a loaded Smith & Wesson .41 caliber revolver, a loaded AR-style 5.56 caliber rifle, an AK-style 7.62x39mm caliber with two banana clips, a Mossberg 30-06 caliber rifle with scope, two empty Tulammo 7.62x39mm caliber ammunition boxes, and one empty Barnes .41 caliber magazine box. (*Id.*)

The Court arraigned Howald on June 29, 2021. (*Id.* at 3.) The Government provided discovery to Howald on July 1, 2021. (*Id.*) Howald filed his first Motion to Dismiss (Doc. 29) on October 8, 2021, asking the Court to dismiss both counts of the Indictment. Howald argued that § 249(a)(2) reflects an unconstitutional extension of Congressional authority under the Commerce Clause. Howald also filed a Motion in Limine (Doc. 31) on October 8, 2021, that sought to exclude evidence of prior bad acts under F.R.E. 401, 402, and 403.

The Court deemed Howald competent to proceed following a competency hearing conducted on September 26, 2022. (Doc. 65.) The Government filed a Superseding Indictment on December 8, 2022. (Doc. 72.) The Court conducted a motion hearing on December 19, 2022. (Doc. 79.) The Court denied Howald's first

Motion to Dismiss and granted, in part, and denied, in part, his Motion in Limine on January 4, 2023. (Doc. 83.)

Howald filed a second Motion to Dismiss on December 23, 2022. (Doc. 81.) Howald moves the Court to dismiss Count II of the Superseding Indictment. The Government filed its Response on January 6, 2023. (Doc. 84.) The Court conducted a motion hearing on January 18, 2023. (Doc. 93.) Howald's jury trial is scheduled for February 7, 2023.

## LEGAL STANDARD

In evaluating a motion to dismiss pursuant to Rule 12 of the Federal Rules of Criminal Procedure, a court must view the factual allegations in the indictment as true and decide only those issues capable of resolution without invading the province of the trier of fact. *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).

## DISCUSSION

Howald contends that the § 924(c)(1)(A) charge (Count II) must be dismissed because its predicate—a violation of § 249(a)(2)—does not require a "crime of violence" as defined by § 924(c)(3). (Doc. 82 at 4–9.) For the reasons discussed below, the Court will deny Howald's motion to dismiss Count II.

I. **Categorical and Modified Categorical Approach.**

The first step in evaluating whether § 249(a)(2) may serve as a permissible § 924(c) predicate offense is determining whether the underlying statute proves "divisible" or "indivisible." *Mathis v. United States*, 579 U.S. 500, 505 (2016). An indivisible statute "enumerates various factual means of committing a single element." *Id.* at 506. A divisible statute, by contrast, sets out "elements in the alternative," "thereby defin[ing] multiple crimes." *Id.* at 505. "Elements" are what the jury must find unanimously and "beyond a reasonable doubt to convict the defendant." *Id.* at 504. "Means" represent statutory phrases that a jury need not unanimously find. *Descamps v. United States*, 570 U.S. 254, 269–70 (2013). Examining the statutory text on its face reveals the potential divisibility of a statute. *Mathis*, 579 U.S. at 517–18.

A court applies the "categorical approach" in the context of indivisible statutes and the "modified categorical approach" in the context of divisible statutes. Under the categorical approach a court will assess "whether the full range of conduct covered by the statute falls within the meaning of" the term or element at issue. *Calvillo-Palacios*, 860 F.3d at 1288. This analysis "does not require—in fact, it precludes—an inquiry into how any particular defendant may [have] commit[ed] the crime." *United States v. Taylor*, __ U.S. __, 142 S. Ct. 2015, 2020 (2022).

Under the modified categorical approach, a court first will determine which alternative element formed the basis of the charge. A court then assesses "whether this divisible offense of [the predicate] satisfies" the specific definition at issue "as a categorical matter." *Buck*, 23 F.4th 919, 927. An offense may not serve as a predicate if the least culpable conduct criminalized by the underlying statute, either in whole or in the relevant, divisible part, proves broader than the statutory definition at issue.

## II. Step One: Whether § 249(a)(2) is Divisible or Indivisible.

The text of § 249(a)(2) criminalizes the following conduct: "willfully caus[ing] bodily injury to any person *or*, through the use of [dangerous weapons including a firearm], attempt[ing] to cause bodily injury to any person because of [a protected category]." § 249(a)(2)(A) (emphasis added). The statute additionally contains a sentencing enhancement provision for circumstances in which "death results from the offense," or "the offense includes kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill." § 249(a)(2)(A)(ii).

Howald provides no specific support for his contention that the Court should find § 249(a)(2) to be indivisible. (Doc. 82 at 9–11.) Howald cites *Taylor*, __ U.S. at __, 142 S. Ct. at 2019, for the proposition that a court always must apply the categorical approach to determine whether a federal felony may serve as a

6

predicate for conviction under the force clause of § 924(c). (Doc. 82 at 9.) This interpretation presupposes a determination at the first step of the analysis that the predicate statute proves indivisible.

The Government contends that § 249(a)(2) proves divisible for the following three reasons: (1) the statute can be divided into completed offenses and attempts; (2) an attempt under the statute requires the use of a dangerous weapon, an element absent from the completed offense requirement; and (3) Howald's charge under § 249(a)(2) includes an attempt to kill that the Government must prove as a separate element. (Doc. 84 at 8–11.) The Court will consider, in turn, each argument regarding § 249(a)(2)'s divisibility.

### A. Impact of *Taylor* on Divisibility.

The U.S. Supreme Court in *Taylor* examined the validity of a § 924(c) sentence enhancement for a Hobbs Act (18 U.S.C. § 1951) conviction. __U.S. at __, 142 S. Ct. at 2019. Howald's interpretation of *Taylor* proves unavailing for two reasons. First, the relevant portion of *Taylor* uses "categorical approach" in broad terms. *Id.* at __, 2020. The U.S. Supreme Court distinguishes the two-step categorical analysis from a fact-intensive inquiry into the circumstances of the defendant's offense. *Id. Taylor* contains no explicit analysis of whether the statute at issue proved divisible or indivisible.

Second, the U.S. Supreme Court confined its inquiry in *Taylor* to *attempted* Hobbs Act robbery rather than considering the statutory provision as a whole. *Id.* at 2020–21. *Taylor*'s reasoning required a determination that the statute was divisible: "Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause." *Id.* at 2020 (emphasis in original). The focus of the U.S. Supreme Court's reasoning in *Taylor* fails to support Howald's contention that § 249(a)(2) proves indivisible. *Id.*

**B. Divisibility Based on Attempts.**

The Ninth Circuit has concluded that statutes generally are divisible between completed offenses and attempted offenses. *United States v. Linehan*, 56 F.4th 693, 700 (9th Cir. 2022). *Linehan* involved a challenge to a defendant's § 924(c) conviction on the basis that the attempt provision of the predicate statute, 18 U.S.C. § 844(d), did not require proof of a crime of violence. *Linehan*, 56 F.4th at 699. The defendant in *Lineman* had been convicted of a completed offense, rather than an attempted offense. *Id.* at 700. The Ninth Circuit noted that "*Taylor* guides our analysis on this point" and concluded with "little difficulty [] that, at the very least, § 844(d) is divisible into completed and attempted offenses." *Id.* (citing *Taylor*, __U.S. __, 142 S. Ct. at 2020). The Court determines that the attempt provision alone renders § 249(a)(2) divisible under the analysis in *Linehan*. 56 F.4th at 700.

8

## C. Divisibility Based on Attempts with Distinct Requirements.

The Ninth Circuit additionally has determined that a statute is divisible where one provision requires the "use of a dangerous weapon" without needing to prove injury, and another provision requires injury without needing to prove that the defendant used a weapon. *United States v. Buck*, 23 F.4th 919, 925 (9th Cir. 2022). The attempt provision of § 249(a)(2) requires the possession of a dangerous weapon. This requirement does not apply to completed § 249(a)(2) offenses. The Court concludes that § 249(a)(2) proves divisible on the basis that the attempt provision includes an additional and distinct requirement, in the form of the use of a dangerous weapon, not present for completed offenses. *Buck*, 23 F.4th at 925.

## D. Divisibility Based on Sentencing Enhancement Provisions.

The Government must prove beyond a reasonable doubt any fact that increases the penalty for a crime beyond the prescribed statutory maximum. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). *Mathis* applied *Apprendi* in the context of a challenge to a mandatory minimum statute triggered by three prior convictions for a "violent felony." 18 U.S.C. § 924(e)(1). *Mathis*, 579 U.S. at 503. The U.S. Supreme Court determined that the statute proved divisible, reasoning that "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Id.* at 518 (citing *Apprendi*, 530 U.S. at 490).

Howald's Superseding Indictment specifies that the offense charged under Count I "included an attempt to kill Individual 1." (Doc. 72 at 5.) Section 249(a)(2) removes the 10-year maximum sentence for offenses that include, among other conduct, "an attempt to kill." § 249(a)(2)(A)(ii). The Government at trial must prove beyond a reasonable doubt that Howald attempted to kill Individual 1. *Apprendi*, 530 U.S. at 490. This attempt-to-kill provision constitutes a separate element and renders divisible § 249(a)(2). *Mathis*, 579 U.S. at 504; *Descamps*, 570 U.S. at 269–70; *Buck*, 23 F.4th at 925.

Based on the determination that § 249(a)(2) proves divisible, the Court next will apply the modified categorical approach to determine whether the statute properly qualifies as a predicate for Howald's § 924(c) charge.

### III. Step Two: Whether § 249(a)(2) Necessarily Requires "Physical Force" Rising to the Level of a "Crime of Violence" Under the Modified Categorical Approach.

A predicate offense qualifies as a "crime of violence" under § 924(c) if the force required by the predicate equals, or proves greater than the § 924(c) force clause. *Mathis*, 579 U.S. at 519; *Linehan*, 56 F.4th at 699. "If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as . . . [a] predicate." *Linehan*, 56 F.4th at 699 (quoting *Borden v. United States*, __ U.S. __, 141 S. Ct. 1817, 1822 (2021) (plurality opinion)).

10

Section 924(c) defines a "crime of violence" as "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). Section 924(c) also contains a residual clause that the U.S. Supreme Court struck down as unconstitutionally vague in *United States v. Davis*, 588 U.S. __, 139 S. Ct. 2319 (2019). § 924(c)(3)(B). The Court will apply only § 924(c)(3)(A)'s definition.

Section 249(a)(2) criminalizes both "willfully causing" and "attempt[ing] to cause" bodily injury. § 249(a)(2). The statute cross-references the definition of "bodily injury" provided in 18 U.S.C. § 1365(h)(4). The statute additionally specifies that the definition "does not include solely emotional or psychological harm to the victim." § 249(c)(1). Section 1365(h)(4) defines "bodily injury" to mean "a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness; impairment of the function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary." § 1365(h)(4).

The modified categorical approach requires the Court to determine whether the specific version of the offense as charged under § 249(a)(2) forces the Government to prove "the use, attempted use, or threatened use of physical force." § 924(c)(3)(A). The Court will analyze the parties' arguments regarding the relationship between § 249(a)(2) and § 924(c)'s "physical force" requirement under the modified categorical approach.

Howald's arguments about § 249(a)(2) turn on the application of the categorical approach. (Doc. 82 at 5–9.) Howald appears not to argue that he could prevail under the modified categorical approach. Howald instead asserts that the statute as a whole does not qualify as a predicate under § 924(c) because a person could violate the statute through an omission or a nonviolent act that would not necessarily involve "physical force." (Doc. 82 at 8–9.) Howald contends that withholding food or medical treatment, for example, could cause "bodily injury" sufficient to support a § 249(a)(2) conviction without employing physical force as required by § 924(c). (*Id.*) Howald relied heavily during the motion hearing on *United States v. Bowers* for the proposition that § 249(a)(1) does not qualify categorically as a crime of violence. No. 2:18-cr-00292-RJC, 2022 WL 17718686, *9 (W.D. Pa. Dec. 15, 2022). In fact, Howald seeks to have the Court ignore the recent decisions of the Ninth Circuit that have rejected similar claims to those undergirding the District Court's decision in *Bowers*.

Howald maintains that § 924(c)'s force clause requires a higher level of force than that covered by § 249(a)(2). (Doc. 82 at 5–6, 9.) Howald cites *Johnson v. United States* for the proposition that "physical force" means "violent force" or "strong physical force" that is "capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010). Howald points to the relevant statutory definition of "bodily injury," which encompasses bruises and "any other injury to

the body, no matter how temporary." § 1365(h)(4). Howald emphasizes that a mere "squeeze of the arm" or "unwanted touching" could cause a bruise or fleeting pain without employing sufficient physical force. (Doc. 82 at 9.)

The Government maintains that the proper unit of analysis is not § 249(a)(2) as a whole, but rather an attempt under § 249(a)(2) with a separate element requiring an attempt to kill under the sentence enhancement provision. (Doc. 84 at 7.) The Government asserts that it necessarily will have to prove physical force both with respect to use of a deadly weapon and to an attempt to kill. (*Id.* at 8–11.) The Government argues in the alternative that § 249(a)(2) as a whole requires sufficient proof of physical force should the Court apply the categorical approach. (*Id.* at 12–13.)

At least one other district court in the Ninth Circuit has found § 249 to qualify as a crime of violence under the categorical approach. *United States v. Earnest*, 536 F. Supp. 3d 688, 719–20 (S.D. Cal. 2021). The Court declines to determine whether § 249(a)(2) as a whole categorically requires "physical force" sufficient to support a § 924(c) conviction in light of its finding that the modified categorical approach applies. The question before the Court remains whether an attempt under § 249(a)(2) that includes, as an element, an attempt to kill necessarily requires "physical force."

**A. "Bodily Injury" Through Omission or Minimal Use of Force.**

Howald's arguments about omissions and *de minimis* uses of force lack merit in the context of the modified categorical approach. *Johnson*, decided in 2000, concluded that "physical force" for the purposes of § 924(c) requires more force than that required for common-law battery. 559 U.S. at 165. The U.S. Supreme Court in *Johnson* reasoned that physical force means "force capable of causing physical pain or injury to another person." 559 U.S. at 140–41.

*United States v. Castleman* and *Stokeling v. United States*, both decided after *Johnson*, make clear that the force required for an attempt to kill attendant to attempted bodily injury with a dangerous weapon under § 249(a)(2) qualifies as "physical force." 572 U.S. 157 (2014); __U.S. __, 139 S. Ct. 544 (2019). Physical force encompasses any "force exerted by and through concrete bodies." *Castleman*, 572 U.S. at 170. This definition includes indirect force and omissions such as denials of medical care or food. *Id.*

The defendant in *Stokeling* attempted to rely upon *Castleman* to argue that relatively minor uses of force did not constitute violent force. *Stokeling*, __ U.S. at __, 139 S. Ct. at 554 (citing *Castleman*, 572 U.S. at 182). The U.S. Supreme Court rejected this argument and concluded that even "force as small as hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling satisfies *Johnson's* definition," because "none of those actions bears any real resemblance to mere

offensive touching, and all of them are capable of causing physical pain or injury." *Id.*

Howald's reliance on *Bowers* proves similarly misplaced. The District Court for the Western District of Pennsylvania concluded in *Bowers* that § 249(a)(1) did not categorically require a crime of violence for purposes of § 924(c). 2022 WL 17718686, at *9. *Bowers* focuses heavily upon the Third Circuit's decision in *United States v. Mayo*. *Bowers*, 2022 WL 17718686, at *5–8 (citing *Mayo*, 901 F.3d 218, 227–28 (3d Cir. 2018)). *Mayo* determined that Pennsylvania's first-degree aggravated assault statute did not constitute a crime of violence because the statute could be violated by an omission. 901 F.3d 225–26. *Bowers* and *Mayo* do not supply persuasive authority. The Third Circuit decided *Mayo* before the U.S. Supreme Court's decision in *Stokeling*. __ U.S. __, 139 S. Ct. 544. *Bowers* represents an unpublished and out-of-circuit decision. *Bowers*'s relevant holding concerned § 249(a)(1), rather than the § 249(a)(2) provision at issue here. 2022 WL 17718686, at *9. Finally, the parties in *Bowers* agreed that the categorical approach applied, rather than the modified categorical approach. *Id.* at *3.

Howald's hypotheticals fail to engage with the specific version of the modified categorical approach at issue. Howald's Superseding Indictment presents no omissions or acts allegedly causing *de minimis* bodily injury. (Doc. 72.) The Court instead must analyze a § 249(a)(2) charge that includes as elements both an

attempt to kill and the use of a dangerous weapon. The Court concludes, for two independent reasons, that this version of a § 249(a)(2) charge under the modified categorical approach necessarily requires "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140–41; *Stokeling*, __ U.S. at __, 139 S. Ct. at 554.

### B. Attempt Requiring Use of a Dangerous Weapon.

First, an attempt under § 249(a)(2) requires proof that the defendant used a dangerous weapon. 18 U.S.C. § 249(a)(2). Crimes committed with dangerous weapons inherently involve the use of physical force for § 924(c) purposes. *United States v. Buck*, 23 F.4th 919, 927 (9th Cir. 2022); *United States v. Gobert*, 943 F.3d 878 (9th Cir. 2019); *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1293 (9th Cir. 2017). "Assault with a deadly weapon . . . necessarily entails the threatened use of force against the person of another." *Calvillo-Palacios*, 860 F.3d at 1293.

The Ninth Circuit reiterated in *Buck* that the "use of a dangerous weapon, especially when deployed to put the victim's life in jeopardy, reflects force that is capable of causing death or serious injury." *Buck*, 23 F.4th at 927. Attempted bodily injury under § 249(a)(2) requires the use of a deadly weapon. § 249(a)(2). A § 249(a)(2) charge that includes, as a separate element, the use of a deadly weapon as part of an attempt necessarily involves the attempted use of physical force. *Buck*, 23 F.4th at 927; *Calvillo-Palacios*, 860 F.3d at 1293.

### C. Attempt-to-Kill Sentencing Enhancement.

Second, the attempt-to-kill provision in § 249(a)(2) constitutes an element that the Government must charge and prove beyond a reasonable doubt before the enhanced punishment applies. *Apprendi*, 530 U.S. at 490. The Government argues that Howald could not have attempted to kill Individual 1 without causing or attempting to cause bodily injury sufficient to meet the § 924(c) "physical force" requirement. (Doc. 84 at 10–11.)

The Fourth Circuit's recent decision in *United States v. Roof*, 10 F.4th 314, 331 (4th Cir. 2021), proves particularly relevant to the question of whether an attempt-to-kill sentencing enhancement element requires proof of physical force. The case addressed Dylan Roof's appeal of his convictions for a number of charges flowing from his racially motivated killings of nine African-American worshippers and faith leaders at a church in Charleston, South Carolina, in 2015. *Id.* at 331–32. Roof challenged his § 924 conviction on the basis that the § 249(a)(1) predicate did not constitute a "crime of violence." *Id.* at 398–99.

The Government had charged Roof with a specific sentence enhancement under § 249(a)(1)(A)(ii)(I) for "death result[ing] from the offense." *Id.* The Fourth Circuit upheld Roof's § 924(c) conviction under the modified categorical approach. The Fourth Circuit reasoned that a person could not violate the separate death-resulting element of the § 241(a)(1) charge "without knowing or intending to

17

inflict upon that person far more than a mere touch or scratch." *Id.* at 402 (internal citation and quotation omitted).

The Government has charged Howald under a different provision of the HCPA than Roof. The Government charges Howald under § 249(a)(2), rather than the § 249(a)(1) charge for Roof, due to the fact that anti-LGBTQ+ animus allegedly propelled Howald's assault compared to the anti-Black racial animus that propelled Roof. (Doc. 72.) In addition, Howald faces a sentence enhancement that results from "an attempt to kill," rather than from "death result[ing] from the offense." § 249(a)(2)(A)(ii)(II). Despite these differences, the same underlying logic applies as in *Roof*, 10 F.4th at 404–05. The Government will have to prove beyond a reasonable doubt that Howald attempted to kill Individual 1. *Apprendi*, 530 U.S. at 490. An attempt to kill categorically requires "the use, attempted use, or threatened use of physical force." § 924(c)(3)(A). A § 249(a)(2) charge that includes, as a separate element, an attempt to kill qualifies as a "crime of violence" under § 924(c).

The Court will deny Howald's motion to dismiss Count II of the Superseding Indictment.

## ORDER

Accordingly, **IT IS ORDERED** that Howald's Motion to Dismiss (Doc. 81) is **DENIED.**

DATED this 25th day of January, 2023.

_____
Brian Morris, Chief District Judge
United States District Court