**ETHAN R. PLAUT**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT 59403**
**119 First Ave. North, #300**
**Great Falls, MT 59401**
**Phone: (406) 761 7715**
**Email: Ethan.Plaut@usdoj.gov**

**ERIC N. PEFFLEY**
**Trial Attorney**
**Criminal Section**
**Civil Rights Division**
**United States Department of Justice**
**950 Pennsylvania Avenue NW**
**Washington, DC 20530**
**Phone (202) 353-5173**
**E-mail: Eric.Peffley@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 21-04-H-BMM** |
| **Plaintiff,** | |
| **vs.** | **UNITED STATES' TRIAL BRIEF** |
| **JOHN RUSSELL HOWALD,** | |
| **Defendant.** | |

1

**INTRODUCTION**

Howald is charged by superseding indictment with two criminal offenses (1) a hate crime, and (2) discharge of a firearm during and in relation to the hate crime. There is also a sentencing enhancement for the hate crime. Trial is scheduled to begin on February 7, 2023, in Helena.

**ELEMENTS**

## A.  <u>COUNT 1 – HATE CRIME</u>

For the defendant to be found guilty of the charge in Count 1 of the indictment, the government must prove each of the following elements beyond a reasonable doubt:

- That the defendant willfully, through the use of a firearm or dangerous weapon, attempted to cause bodily injury to any individual that the defendant perceived to be "lesbian" or "queer" in Basin, Montana;

- That the defendant did so because of the actual or perceived sexual orientation of any person; and

- That in connection with the offense the defendant employed a firearm, dangerous weapon, or other weapon that had traveled in interstate or foreign commerce; or that the defendant's conduct otherwise affects interstate or foreign commerce.[1]

### <u>First Element</u>

"Willfulness" requires proof that the defendant acted intentionally and purposely with the specific intent to do something that the law forbids, that is, with

---

[1] 18 U.S.C. § 249(a)(2); Superseding Indictment

bad purpose.[2] The government is not, however, required to prove the person was aware of the specific law or rule that his conduct was violating.[3] The jury can consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted willfully.

To prove "attempt," the government must prove the following beyond reasonable doubt:

- The defendant intended to cause bodily injury; and

- The defendant took a substantial step toward doing so, strongly corroborating his intent.

Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances. Jurors do not need to agree unanimously as to which particular act

---

[2] "Willfully" Section 4.6, Manual of Model Criminal Jury Instructions for the Ninth Circuit (2022 Edition) (explaining that Ninth Circuit Cases have defined "willful" in different terms depending on particular crime charged); *Bryan v. United States*, 118 S. Ct. 1939, 1945 (explaining that the term "differentiates between deliberate and unwitting conduct" and generally means an act "undertaken with a 'bad purpose'" that requires proof "that the defendant acted with knowledge that his conduct was unlawful");

[3] *Id*. at 1947 (finding that the "willfullness requirement of § 924(a)(1)(D) does not carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required"); *see also*, Firearms – Dealing, Importing, Manufacturing" Section 14.3, Manual of Model Criminal Jury Instructions for the Ninth Circuit (2022 Edition) ("Willfully, as used in this statute, requires proof that the defendant knew that his or her conduct was unlawful, but does not require proof that the defendant knew of the federal licensing requirement."); *United States v. Laurico-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010) (explaining that "willfully is a synonym for intentionally").

or actions constituted a substantial step toward the commission of a crime [4]

**Second Element**

To prove that the defendant attempted to cause bodily injury "because of" the actual or perceived sexual orientation of any person, the United States must prove beyond a reasonable doubt that the alleged attempt to cause bodily injury would not have occurred "but for" the actual or perceived sexual orientation of any person.[5]  This element is met so long as the government can prove that, despite any other reason the defendant may have had for the alleged attempt to cause bodily injury, it would not have taken place absent the defendant's perception regarding any person's sexual orientation.  Stated differently, sexual orientation must have played a determinative role in the defendant's decision to attempt to cause bodily injury, meaning that the attempt would not have taken place without the incremental effect of the sexual orientation of any person.[6]

This can be a "sweeping standard" and does not require the government to prove that sexual orientation was the sole cause, as "events often have multiple

---

[4] "Attempt" Section 4.4, Manual of Model Criminal Jury Instructions for the Ninth Circuit (2022 Edition); 18 U.S.C. § 249(a)(2).
[5] *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020) ("The 'because of' test . . . is established whenever a particular outcome would not have happened 'but for' the purported cause.")
[6] *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (explaining that an ADEA claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision making] process and had a determinative influence on the outcome")

but-for causes."[7]   Therefore, the "defendant cannot avoid liability just by citing some other factor that contributed" to the action,[8] "so long as the other factors alone would not have" led to the outcome—meaning that the protected characteristic "was the straw that broke the camel's back."[9]

The United States does not need to prove the sexual orientation of Individual 1 or any other person described in the indictment.[10]   The United States also does not need to prove that the defendant was or was not of any particular sexual orientation.[11]   Therefore, so long as a jury finds that the defendant acted because of the actual or perceived sexual orientation of any person, they may find this element has been satisfied regardless of the defendant's own sexual orientation.

### **Third Element**

Regarding the final element, a firearm, dangerous weapon, or other weapon has traveled in interstate commerce if it had been shipped or transported from one state to another. A firearm, dangerous weapon, or other weapon has traveled in foreign commerce if it had been shipped or transported between a foreign nation

---

[7] *Id.*
[8] *Id.*
[9] *Burrage v. United States*, 134 S. Ct. 881, 888-89 (2014).
[10] 18 U.S.C. § 249(a)(2) (". . . because of the *actual or perceived* . . . sexual orientation of any person.") (emphasis added).
[11] *Id.* (". . . because of the actual or perceived . . . sexual orientation of *any person*.") (emphasis added).

and the United.[12]

Conduct "otherwise affects" interstate or foreign commerce if it in any way involves, interferes with, changes, or alters the movement or transportation or flow of goods, merchandise, money, or other property in commerce between or among the states or between the United States and a foreign country. The effect can by minimal. It is not necessary for the government to prove that the defendant knew or intended that his conduct would affect commerce; it must prove only that the natural consequences of his conduct affected or could have affected commerce in some way. The jury does not have to find that there was an actual effect on commerce. The government must show only that the natural result of the offense would be to cause an effect on interstate commerce to any degree, however minimal or slight.[13]

## B. COUNT 1 ENHANCEMENT – ATTEMPT TO KILL

Count 1 includes an enhancement allegation, that the offense included an attempt to kill Individual 1. For the jury to find this enhancement applies, the government must prove each of the following elements beyond a reasonable doubt, in addition to those above:

- The defendant did something that was a substantial step toward killing

---

[12] "Firearms – Unlawful Possession," Section 14.15, Manual of Model Criminal Jury Instructions for the Ninth Circuit (2022 Edition) (modified to include dangerous weapon and other weapon)
[13] "Hobbs Act – Affecting Interstate Commerce," Section 9.9, Manual of Model Criminal Jury Instructions for the Ninth Circuit (2022 Edition).

Individual 1 and that strongly corroborated the defendant's intent to commit that crime; and

- That when the defendant took that substantial step, the defendant intended to kill Individual 1.

Mere preparation is not a substantial step. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the intended outcome will take place unless interrupted by independent circumstances.[14]

The jurors must unanimously agree that the government proved beyond reasonable doubt that the defendant's conduct included an attempt to kill. However, jurors do not need to agree unanimously as to which particular act or actions constituted a substantial step.[15]

## C. COUNT 2 - § 924(C)

For the defendant to be found guilty of the charge contained in Count 2 of the indictment, the government must prove each of the following elements beyond a reasonable doubt:

- The defendant committed the crime charged in Count 1 of the indictment, which is a crime of violence; and

- The defendant knowingly used, carried, brandished, or discharged a firearm during and in relation to that crime.[16]

---

[14] "Attempted Murder," Section 16.5, Manual of Model Criminal Jury Instructions for the Ninth Circuit (2022 Edition) (modified for enhancement instead of crime)

[15] *Id*.

[16] "Firearms-Using, Carrying, or Brandishing in Commission of Crime of Violence or Drug Trafficking Crime," Section 14.22, Manual of Model Criminal Jury Instructions for the Ninth Circuit (2022 Edition) (modified to include discharge)

A defendant "used" a firearm if he actively employed the firearm during and in relation to the crime charged in Count 1. A defendant "carried" a firearm if he knowingly possessed it and held, moved, conveyed, or transported it in some manner on his person or in a vehicle. A defendant "brandished" a firearm if he displayed all or part of the firearm, or otherwise made the presence of the firearm known to another person, to intimidate that person, regardless of whether the firearm was directly visible to that person. A defendant "discharged" a firearm if he fired it, shot it, or otherwise made it go off.[17]

The government is not required to prove that the defendant intended to discharge the firearm.[18]

A defendant used, carried, brandished, or discharged a firearm "during and in relation to" Count 1 if the firearm facilitated or played a role in that crime.[19]

## PLEA CONSIDERATIONS

Although the defendant is proceeding to trial, plea offers were extended to the defendant, in writing, that, in the government's view, would have been more

---

[17] Id.; Discharge, American Heritage Dictionary (2022); Discharge, Merriam-Webster Dictionary (2022);

[18] *Dean v. United States*, 556 U.S. 568, 577 (2009) (discharge of firearm does not require separate proof of intent; "10-year mandatory minimum applies if a gun is discharged in the course of a violent or drug trafficking crime, whether on purpose or by accident").

[19] "Firearms-Using, Carrying, or Brandishing in Commission of Crime of Violence or Drug Trafficking Crime," Section 14.22, Manual of Model Criminal Jury Instructions for the Ninth Circuit (2022 Edition)

beneficial to the defendant than a conviction following trial. *See Missouri v. Frye*, 132 S. Ct. 1399 (2012).

## LENGTH OF TRIAL AND WITNESSES

The United States anticipates calling approximately 21 witnesses and playing some or all of a recorded deposition of another witness.  Its case-in-chief should take approximately 2 full days, after jury selection and openings, subject to cross-examination.

## DEPOSITION TESTIMONY

Pursuant to prior order (Doc. 88) a deposition of witness R.A. was taken on January 23, 2022. It is anticipated that some or all of that deposition will be played to the jury in lieu of live testimony from R.A.

## STIPULATION

The parties have reached a stipulation (Doc. 98) as to chain of custody and admissibility of 18 physical exhibits (consisting of firearms, ammunition, casings, and firearm accessories). The stipulation also includes the results of firearm toolmark analysis completed by the ATF, which provided information about an AK-style assault rifle's connection to casings and a bullet recovered at the scene.

## INSTRUCTIONS/VERDICT

The United States has submitted a set of proposed jury instructions, as well as a verdict form. The United States' filing identifies those instructions

that are joint and those that are opposed. It appears the contested instructions

are: U.S. Proposed 32 ("Willfully" defined); U.S. Proposed 38 ("Because of"

defined); U.S. Proposed 40 (Firearm in Interstate/Foreign Commerce); U.S.

Proposed 41 ("Otherwise affects"); U.S. Proposed 42 ("Attempt to kill"). The

United States submits that the proposed instructions are appropriate as they

correctly explain the principles above, based on the authority also identified

above.

The government's proposed verdict form includes special

interrogatories for the Count 1 enhancement (attempt to kill) and the Count 2

enhancements (brandish and discharge a firearm).

## ANTICIPATED PROOF

On Sunday, March 22, 2020, the defendant went on a self-described mission

to rid the town of Basin, Montana of its lesbian and gay community.  Armed with

three rifles and two pistols—and knowing K.J. (Individual 1) as a lesbian—

Howald approached her Basin residence on foot and fired an AK-style assault rifle

at her property. Several rounds went through the fence of her property and rounds

hit her yard and porch. One round traveled through an exterior wall, across a room,

through an interior wall, bounced off the ceiling of her kitchen, and finally lodged

in the wall of her kitchen. She was home at the time but was not struck.

After firing at K.J.'s house, Howald walked down Basin St., in the direction

of several other houses occupied by people who identify—and are known locally —as gay or lesbian. A service at the local church had just finished and individuals leaving church saw the defendant walking on Basin Street. R.H. and S.H. recognized Howald and approached him to intervene. They heard him talk about his mission of killing lesbian and gay people in town and saw his weapons. As they spoke to him, the church's pastor (F.O.) approached to intervene as well. He too spoke to the defendant and tried to talk him down.

F.O. unknowingly had left on a device that he used to record his sermons. That device captured roughly 10 minutes of the interaction with the defendant, until a point when the defendant demanded that F.O. walk away from him. The recording captures Howald saying various things, including statements that he might have killed a lesbian and that he hoped he had, and that he was going to get rid of lesbians and queers in Basin. The recording also captured the defendant firing off several more rounds during his interaction with these individuals.

While S.H., R.H., and F.O. spoke to the defendant, residents called 911 and spoke to Jefferson County Sherriff's Office dispatchers, including Becky Warner. These residents included T.H. He and his wife K.H. had heard gunshots and looked outside to see the defendant near the K.J. residence. JCSO Deputy Shaun Gardner was the first to the scene. He saw the defendant with R.H. and S.H. and ordered the defendant to put his guns down. The defendant refused, pointed a rifle at the

deputy, and fled on foot into the wooded hills around Basin. He fired at least one more shot as he went.

Seven spent shell casings and two unspent rounds of ammunition were found in the street in front of K.J.'s home.  Four spent casings were found near Basin Creek Pottery, near where S.H. and R.H. had intervened. Investigators located bullet holes in K.J.'s fence, yard, deck, and house. They found a bullet lodged in the wall near K.J.'s refrigerator.

The following day, JCSO officers—including Gardner—arrested the defendant while he was driving a Ford Mustang on Basin Creek Road. At the time of arrest, he had a fixed blade knife and a loaded .45 pistol on his person and an AR-style rifle and a .41 caliber revolver in a backpack in the car. He made statements during the course of arrest.

In the following days, investigators learned that Howald had been residing at a camper on R.A.'s property in Basin. A search of that camper uncovered a Mossberg 30-06 hunting rifle that matched witness descriptions from March 22nd, and also an AK-47 style assault rifle witnesses reported the defendant had in his hands on March 22nd (although some described the rifle as being the visually similar "SKS" style).

The ATF concluded that the ammunition used in the offense was 7.62mm Tulammo, manufactured in Russia; and that several parts of the AK-47-style rifle,

including critical and non-critical components, were manufactured in Romania. The ATF also determined that 10 of the 11 spent casings recovered on March 22nd had conclusively been fired in that rifle and that the bullet recovered from the home of K.J. could have been fired from that same rifle. The ATF determined that the two pistols and the Mossberg rifle traveled in interstate commerce. The ATF could not identify manufacturer information on the AR-style rifle because such information had been manually obliterated.

Follow-up investigation found that several individuals who identified as gay and lesbian lived in the direction the defendant had been walking when S.H. and R.H. intervened.  These individuals include M.J.W., M.K., J.L., and others. Investigators also learned from witnesses, including K.P., K.S., and S.G., that the defendant had expressed bias against those who identify as gay and lesbian on prior occasions.

## ANTICIPATED EXHIBITS

1.   Physical Exhibits – Firearms, ammunition, spent casings, magazines, firearm accessories, and a fired round, all associated with the defendant;

2.   Imagery of Basin Montana;

3.   Photos of items recovered on March 22nd, of items seized during arrest of defendant, of items seized from searches of his vehicle(s), of items seized from the search of his camper; of damage to KJ residence and property; of firearms and firearm parts, of ammunition;

4.   Drawing of KJ residence floorplan, showing the trajectory of the bullet that went through her house;

5.      Photo of KJ's truck;

6.      Audio clip of recording from F.O.;

7.      Body and dashcam of incident from Deputy Gardner;

8.      Body and dashcam of arrest of defendant from Deputy Gardner;

9.      911 Call(s);

10.     Still images from bodycam.

The government may also offer additional exhibits in rebuttal, such as additional photos, recorded jail calls, and additional 911 calls.

## ANTICIPATED WITNESSES

1.      S.H.;

2.      F.O.;

3.      R.H.;

4.      K.J.;

5.      Becky Warner (JCSO Dispatch);

6.      T.H.;

7.      K.H.;

8.      Shaun Gardner (retired JCSO);

9.      Michael Johnson (retired JCSO);

10.     Scott Mercer (JCSO)

11.     Chad McFadden (retired JCSO);

12.   Craig Doolittle (retired JCSO);

13.   Kyle Solon (ATF);

14.   Mark Wozniak (Doc. 96-Expert Notice);

15.   R.A. (via recorded deposition)

16.   K.P.;

17.   K.S.;

18.   S.G.;

19.   J.L.;

20.   M.K.;

21.   M.J.W.;

22.   Charles Sampson (Case Agent)

## ANTICIPATED LEGAL ISSUES

As an aid to the Court in matters of law that may appear at trial in this case, the government submits this Trial Brief regarding certain areas of law:

### I.   <u>Defendant's statements to others</u>

Rule 801(d)(2) defines a party opponent's statement as non-hearsay, meaning it can be admitted as substantive evidence. Fed. R. Evid. 801(d)(2). This evidence, which is any statement made by a defendant, is admissible as a result of the "adversary system." *Advisory Comm. Notes*, Fed. R. 801(d)(2). The party-opponent rule has enjoyed the "freedom" from the strict requirements that other

rules might require. The courts should give "generous treatment" to such statements and admit them into evidence. *Id.*

In this case, the United States expects to introduce statements the defendant made to others. For example, the United States expects to introduce statements the defendant made to R.H. and S.H. during his attack and statements he made in the past reflecting animosity towards gays and lesbians. In addition, the United States may offer evidence of statements the defendant made during the course of his arrest. When offered into evidence by the United States, these are non-hearsay.

However, if offered by the defense, the defendant's statements—such as his statements to friends and family—are *not* offered by the party-opponent and can only be admitted if subject to an exception to the rule against hearsay.[20]

## II.   <u>Bias Evidence</u>

Because the defendant's motive is an element that the government must prove in prosecutions involving bias-motivated crimes, evidence that shows Howald's bias should be admitted. *See United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003) (upholding admission of color photographs of swastika tattoos, photographs of defendants in Heil Hitler poses, registration forms for Aryan

---

[20] Nor does the government need to play the full recording of the defendant's arrest or play every statement he made as part of that arrest. Fed. R. Evid. 106 allows an adverse party to seek the introduction of another part of a writing or recorded statement "that in fairness ought to be considered at the same time." It only applies, however, if a misleading impression is created in the admitted portion, such that the portion is "taking something out of context." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014).

Nations World Congress, and skinhead paraphernalia as direct evidence of motive element); *United States v. McInnis*, 976 F.2d 1226, 1230 (9th Cir. 1992) (admitting a "sign reading 'All Niggers Will be Executed,' [] dolls with nooses around their necks, and [a] machete in [a] sheath reading 'Nigger Sticker'" that served as direct evidence of racial motive); *United States v. Dunaway*, 88 F.3d 617, 619 (8th Cir. 1996) (evidence of racist views, speech, and conduct admissible in prosecution because motive was element of the crime); and *United States v. Magleby*, 241 F.3d 1306, 1315-20 (10th Cir. 2001) (racist lyrics of song admissible to prove the racially motivated crime charged, holding in the § 3631 context that "[t]he lyrics and Mr. Magleby's familiarity with them are *probative of his racial animus* in burning the cross[,]" and that "[t]he necessity of demonstrating the context in which the cross was burned renders the [lyrics] and other evidence of hostility toward the presence of African-Americas in this country *intrinsic* to a violation of § 241.") (emphasis added).

Here, evidence of bias and/or animus against lesbians is admissible because it is direct evidence of the crime charged. Accordingly, testimony from witnesses about prior statements the defendant made and actions he took that demonstrated bias or animosity towards gays or lesbians is direct evidence of Count 1.

In the alternative, this evidence is also admissible under Fed. R. Evid. 404(b).[21] *See United States v. Woodlee*, 136 F.3d 1399, 1410 (10th Cir. 1998) ("[T]he government was required to prove [the defendant] acted because of the victim's race, color, religion, or national origin. Accordingly, it falls squarely within the motive and intent purposes delineated in 404(b)."). Under that rule, evidence of the defendant's other acts may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Blitz*, 151 F.3d 1002, 1007 (9th Cir 1998) (citing Rule 404(b)). "So long as the evidence is offered for a proper purpose, the district court is accorded wide discretion in deciding whether to admit the evidence." *Id.* (quotation and citation omitted). Moreover, evidence of prior bad acts may be admitted "for the purpose of providing the context in which the crime occurred." *United States v. Rrapi*, 175 F.3d 742, 748 (9th Cir. 1999).

Considered a rule of "inclusion" in the Ninth Circuit, Fed. R. Evid. 404(b) provides that relevant evidence of other acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. *United States v. Diggs*, 649 F.2d 731, 737 (9th Cir. 1980), *cert. denied*

---

[21] Out of an abundance of caution, the government filed a Rule 404(b) notice in advance of trial. (Doc. 97).

454 U.S. 970 (1981); *United States v. Blitz*, 151 F.3d 1002; and *United States v. Murillo*, 255 F.3d 1169 (9th Cir. 2001) (delineates admissibility criteria).

To admit evidence for one of the permissible purposes under the rule, the following foundation is necessary:

- there must be sufficient proof for the jury to find that the defendant committed the prior act;

- the prior act must not be too remote in time;

- if used to prove intent, the prior offense must be similar to the charged offense;

- the prior act must be introduced to prove a material issue; and

- the appropriate value must outweigh any prejudice.

*United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989), *cert. denied* 494 U.S. 1083 (1990).[22] Statements witnesses heard the defendant make about biases towards gays and lesbians would meet all criteria. Regarding remoteness, in this situation, even statements made years ago are not "too remote" because they only confirm that the defendant's bias is longstanding and deeply engrained. Moreover, the testimony of S.G. relates directly to statements of the defendant captured on the audio recording captured during the charged conduct.

---

[22] The fact that the prior acts are protected under the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489, 113 S. Ct. 2194, 124 L.Ed.2d 436 (1993)

### III.   **Evidence of Flight**

The government will introduce circumstantial evidence as to elements of the

charges. This evidence includes, but is not limited to, the defendant's flight. *See*

*United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986) ("Evidence of flight is

generally admissible as evidence of consciousness of guilt and of guilt itself.");

*Marcoux v. United States*, 405 F.2d 719, 721 (9th Cir. 1968) ("It is today

universally conceded that the fact of an accused's flight, escape from custody,

resistance to arrest, concealment, assumption of a false name, and related conduct,

are admissible as evidence of consciousness of guilt, and thus guilt itself.").[23]

### IV.   **Evidence of Defendant's Character**

The Federal Rules of Evidence generally prohibit the use of character

evidence to show that the person acted in accordance with that character. Fed. R.

Evid. 404(a)(1) ("Evidence of a person's character or character trait is not

admissible to prove that on a particular occasion the person acted in accordance

with the character or trait.").

However, under Rule 404(a)(2)(A), a defendant may offer evidence of his

own "pertinent" trait and, if admitted, the prosecutor may offer evidence to rebut

---

[23] The United States has not requested an instruction on flight or concealment of identity. "The Committee generally recommends against giving specific inference instructions in areas such as flight or concealment of identity because the general instruction on direct and circumstantial evidence is sufficient." Ninth Cir. Model J.I. 4.18 cmt.

it.[24] The Ninth circuit has previously identified "honesty, truthfulness, law-abidingness, peaceableness, and being a violent and angry person" as "character traits" under Rule 404(a). *United States v. Weber*, 2022 WL 2463039, *2 (D. Mont. July 6, 2022) (quotation omitted) (collecting cases). A character trait is generally "pertinent" if it is "relevant." *Id*. at *4.

If a trait is both a character trait and pertinent, Rule 405 describes the methods that can be used to prove that character trait:

(a) By Reputation or Opinion. When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

(b) By Specific Instances of Conduct. When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.

Fed. R. Evid. 405. Thus, unless a pertinent character trait of the defendant is *also* an essential element of a crime or defense, the defendant would not be permitted to introduce evidence of specific instances of conduct.

And, in either event, if the defense introduces character evidence of a pertinent trait, the prosecution has options to rebut such evidence. Fed. R. Evid.

---

[24] There are other exceptions that could be relevant in this case as to witnesses who testify, including the defendant, i.e. Fed. R. Evid. 404(a)(3) ("Evidence of a witness's character may be admitted under Rules 607, 608, and 609).

404(a)(2)(A). The prosecution may cross-examine any character witness about his

or her knowledge of "relevant specific instances" of the defendant's conduct. Fed.

R. Evid. 405(a). To do so, the specific instances brought up on cross must be

"relevant" to the same trait about which the defendant introduced evidence and the

prosecutor must have a good faith basis to believe that the specific instance of

conduct occurred. *See United States v. Scholl*, 166 F.3d 964, 975 (9th Cir. 1999).

There is a preference for a judicial determination regarding the "good faith basis"

before such a question is asked. *See, e.g., United States v. Davenport*, 753 F.2d

1460, 1464-65 (9th Cir. 1985). And the prosecutor may generally ask the witness

whether the witness is aware that the defendant committed the acts at issue in the

case on trial or ask whether, assuming the defendant committed the charged

offense, the witness's testimony would change. *See United States v. Schwayder*,

312 F.3d 1109, 1121 (9th Cir. 2002).[25]

The United States would seek a judicial determination of proper cross

examination should the defense offer character evidence. However, such character

evidence could open the door to cross examination on several types of specific

instances, including witness' knowledge of specific instances of conduct addressed

---

[25] Additionally, the prosecution can cross examine the witness—like any other witness—about the character witness's own biases or, under Rule 608(b) the character witness's own acts that are probative of untruthfulness. Fed. R. Evid. 608(b)(1). The prosecution can also call its own rebuttal witness to testify as to opinion or reputation evidence about the defendant's same character trait. Fed. R. Evid. 405(a).

in the Court's ruling on prior convictions and misconduct. (Doc. 83 at 15). It could also "open the door" to other evidence of character traits that the government has—including a booking photo from Montana State Prison showing the defendant has a swastika tattoo on a forearm,[26] and a 911 call from the day of the incident reporting hearing that the defendant is out shooting guns in the middle of town, and that the defendant had recently threatened to "blow" the caller's head off.[27]

## V.    __Authentication__

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Testimony by a witness with knowledge that an item "is what it is claimed to be" is one way in which evidence can be authenticated. Fed. R. Evid. 901(b)(1).

## VI.   __Testimony from M.J.W., M.K., J.L__

As explained above, the United States will present testimony from other witnesses—in addition to K.J.—who identify as gay, lesbian, or queer and live in Basin, Montana. These witnesses will provide information about the background of the gay and lesbian community in Basin, identify where they resided in March of 2020, explain their own whereabouts and observations on the date of the incident,

---

[26] If, for example, a defense character witness were to testify that the defendant in fact has no biases.

[27] If, for example, this same potential character witness were to testify that the defendant had a character for peacefulness.

and explain their reactions when they heard from others about Howald's self-expressed intent on March 22, 2020.

The Superseding Indictment alleges the defendant "attempted to cause bodily injury to individuals that HOWALD perceived to be 'lesbian' and 'queer' in Basin, Montana." (Doc. 73 at 5). Accordingly, these individuals fall within the group of victims in this case. In fact, the evidence will show that the defendant was moving in the general vicinity of their residences on March 22, 2020. And it will show that his self-expressed intent was in no way limited to K.J., but included anyone else in town who he perceived to be lesbian or gay. The historical information these witnesses will provide about Basin is relevant to show that their sexuality (and their whereabouts) were well known in Basin and, therefore, more likely known to the defendant; other witnesses will testify that he spent much of his life in Basin. Additionally, to the extent they describe controversy or conflict involving the gay and lesbian community in Basin, such testimony is relevant for the same reason: Generally known information in Basin is relevant to explaining the defendant's ability to perceive these people as having a particular sexual orientation and, moreover, to explaining his animosity towards them.

Last, their reactions to the incident (and what they heard about the incident from others) is admissible evidence. What they heard about the incident after-the-fact would be non-hearsay, offered to show the effect on the listener as opposed to

the truth of the matter asserted. *See United States v. Payne*, 944 F.2d 1458, 1472

(9th Cir. 1991) ("We find that the statement properly was treated as non-hearsay

because it was not introduced for the truth of the matter asserted. The statement

was introduced ... to show the effect on the listener."). There would be no Rule 403

unfair prejudice because the government will prove through other means the truth

of what they heard. And this evidence—both the effect of hearing Howald's

motive and descriptions of the history of the gay, queer, and lesbian community in

Basin—is relevant, not only because these witnesses are alleged victims but also

because this evidence relates to the "otherwise effects" prong of the third element

the government must prove for Count 1.

## VII.   <u>Impeachment by prior conviction – Fed. R. Evid. 609</u>

Rule 609(a)(1) allows impeachment of a witness by evidence of prior

convictions if the crime was punishable by death or imprisonment for over a year,

provided the court determines that the probative value of admitting the evidence

outweighs its prejudicial effect to the defendant. *United States v. Dixon*, 547 F.2d

1079, 1082-83 (9th Cir. 1976); *see* Fed. R. Evid. 609(a)(1). Rule 609(a)(2) permits

impeachment by evidence of a prior conviction if the crime involved dishonesty or

false statement, regardless of the punishment. *Dixon*, 547 F.2d at 1083; *see* Fed. R.

Evid. 609(a)(2).  In assessing Rule 609, the Court should consider five factors: (1)

the impeachment value of the prior crime; (2) the point in time of the conviction;

(3) the similarity between the past crime and the charged offense; (4) the importance of the witness testimony; and (5) the centrality of the witness credibility.  *United States v. Perkins*, 937, F.2d 1397, 1406 (9th Cir. 1991).

If more than 10 years have passed since the witness's conviction or release from confinement for it, *whichever is later*, evidence of the witness's conviction is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and the proponent gives an adverse party reasonable written notice of its intent to use the prior conviction.  Fed. R. Evid. 609(b).

The Court previously ruled that the following are not admissible at trial, absent further specific ruling from the Court: (a) the defendant's 2006 state court conviction for felony aggravated animal cruelty (and the conduct underlying that conviction); (b) the defendant's 2021 state court conviction for felony criminal

//

//

//

//

//

//

//

endangerment, and (3) a 2018 incident at a bar in Basin. (Doc. 83 at 15). The Court deferred judgment regarding admissibility should the defendant testify. (*Id*. at 16).

DATED this 31st day of January 2023.

JESSE A. LASLOVICH
United States Attorney


*/s/ Ethan R. Plaut*
ETHAN R. PLAUT
Assistant U.S. Attorney


*/s/ Eric N. Peffley*
ERIC N. PEFFLEY
Trial Attorney