Colin M. Stephens
Nick K. Brooke
STEPHENS BROOKE, P.C.
315 W. Pine
Missoula, MT 59802
Phone:  (406) 721-0300
colin@stephensbrooke.com

*Attorneys for Defendant*

**In the United States District Court**
**For the District of Montana**
**Helena Division**

| United States of America, | Cause No. CR 21-04-H-BMM |
|---|---|
| Plaintiff, | |
| -vs- | **Defendant's Trial Brief** |
| John Russell Howald, | |
| Defendant. | |

**Trial Brief**

*I.  Introduction*

Howald had not intended on filing a trial brief.  However, in light
of the government's own, Dkt. 104, the below serves to address some of
the issues raised by the government.

///

## II.  Count 1 Enhancement and Mens Rea[1]

It is unclear from the government's analysis of this issue whether

the government assumes without stating the mens rea of the

underlying offense also applies to the enhancement, or if the

government believes it is not required to prove a mental state as an

element of the enhancement.   Either clarity or correction is necessary.

Application of this enhancement significantly enhances the

statutory maximum sentence that Howald could receive if convicted.

Therefore, it is subject to the Supreme Court's decision in *Apprendi v.*

*New Jersey*, 503 U.S. 466, 489 (2000) ("Other than the fact of a prior

conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to the jury, and

proved beyond a reasonable doubt.")  The enhancement, therefore, is an

element of the underlying offense if the government wishes to seek the

enhanced sentence.

As discussed in the commentary to Defense Proposed Jury

Instruction 4, "[C]ongress intends to require a defendant to possess a

---

[1]Dkt. 104, pgs. 6-7.

culpable mental state regarding 'each of the statutory elements that

criminalize otherwise innocent conduct.'" *Rehaif v. United States*, 139,

S. Ct. 2191, 2195 (2019) (citing and quoting *United States v. X-Citement*

*Video, Inc.*, 513 U.S. 64, 72 (1994)).

The statute forming the basis for Count 1 and the sentencing

enhancement are parsed into the relevant following elements:

> Whoever . . . (1) willfully (2) attempts to cause (3) bodily
> injury (4) to any person (5) through use of a firearm (6)
> because of the actual or perceived sexual orientation of any
> person shall be imprisoned for any term of years or life (7) if
> the offense includes an attempt to kill.

*18 U.S.C. § 249* [2]. The language pertaining to the sentencing

enhancement contains no independent *mens rea* language but rather

provides enhanced penalties for the overall specific intent crime.

In *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009), the

Supreme Court held that, "[i]n ordinary English, where a transitive

---

[2]The statute contains a specific exemption for those acting with
lawful authority. However, in light of existing Ninth Circuit law, that
issue is more likely an affirmative defense and Howald's burden to
prove. See United States v. Charette, 893 F.3d 1169 (9th Cir. 2018)
(lawful authority to kill a grizzly an affirmative defense rather than
government's burden to prove the nonexistence of a takings permit
under the Endangered Species Act.)

verb has an object, listeners in most contexts assume that an adverb (such as knowingly [or willfully]) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." In a concurring opinion, Justice Alito opined, "I think it is fair to begin with a general assumption that the specified *mens rea* applies to all the elements of the offense." *Flores-Figueroa*, 556 U.S. at 660 (Alito, J., concurring). Section 249 contains two transitive verbs relevant to this discussion but only one mental state adverb. Both the holding in *Flores-Figueroa* and the ordinary English referenced therein lend weight to the proposition that the adverb, "willingly," modifies both the element of "attempts to cause bodily injury" **and** the "attempt to kill" in the sentencing enhancement.

Therefore the government must prove, and the jury must be instructed, that the mental state "willingly" applies to both the underlying offense and the sentencing enhancement.

## II. *Irrelevant Witnesses: M.J.W., M.K., J.L.*

The government's trial brief references J.L., M.K., and M.J.W. (Dkt. 104). As of this writing, with the exception of J.L., Howald is

unable to put names to these witnesses. Similarly, the government has provided no Reports of Investigation or indication of what these witnesses would say beyond what it set forth in Part VI of its Trial Brief.

Although the government asserts these witnesses will provide testimony about where they resided in March of 2020, and explain their whereabout and observations on the date of the incident, it has provided no details about what, if anything each witness will say about the specific date of March 22, 2020. The government further asserts that each witness will "explain their reactions when they heard from others about Howald's self-expressed intent on March 22, 2020." (Dkt. 104 at 23). With respect to the government and these witnesses, such testimony is wholly irrelevant.

The government attempts to shoehorn relevance by asserting that "these individuals fall within the group of victims in this case," because they are "lesbian" and "queer" and the Superseding Indictment "alleges the defendant 'attempted to cause bodily injury to individuals HOWALD perceived to be lesbian and queer in Basin, Montana.'" (Dkt.

104 at 24). However, the Superseding Indictment goes on to state

"specifically, HOWALD armed himself with firearms and ammunition,

discharged ammunition through a firearm into Individual 1's house . . .

." Throughout this proceeding, Individual 1 has been consistently

referred to as "the victim." See e.g., "An attempt to cause bodily injury

with a dangerous weapon with the intent to kill the victim is without a

doubt a crime of violence." (Govt's Response to Motion to Dismiss

Count 2, Dkt. 84 at 10). If the government seeks to expand the range of

"victims" then much of the government's argument in response to the

defense's motion to dismiss Count 2 must be reevaluated given that it

is expected that Howald did not deploy any force against any of these

new witnesses/victims.

 While these three individuals may indeed be reevaluating their

decision to reside in Basin three years after the events at issue, and the

Court might allow them to speak at any sentence hearing in this

matter, it does not make them "victims" to the point that their evidence

becomes relevant. Finally, it does not excuse the government's

untimely disclosure of these witnesses and the yet-to-be-disclosed

reports of any interviews.

Howald would note that the evidence that has thus far been disclosed suggests that S.A. Charles Sampson asked an individual, B.J., to show him around Basin and point out where other lesbians reside. This tour of Basin occurred on June 26, 2020.  At minimum, the government was on notice of these individuals well in advance of disclosing them in a trial brief a week before trial, and well beyond this Court's discovery deadline and the dictates of *Rule 16* of the Federal Rules of Criminal Procedure.

Believing victimhood establishes relevance, the government then argues the testimony of these individuals is not hearsay because it is being offered to show the effect on the listener.  Assuming *arguendo* that the government's theory that the statements are not subject to hearsay exclusion, the Rules of Evidence still require exclusion of the statements.

The government proffers a theory of relevance that "[t]he historical information these witnesses will provide about Basin is relevant to show that their sexuality (and their whereabouts) were

known in Basin and, therefore, *likely known* to the defendant." (Dkt.
104 at 24) (emphasis added).

First, such testimony must be excluded subject to *Fed. R. Evid.*
*602.* If these witnesses only speculate that Howald likely knew where
they lived, they have no personal knowledge that he actually knew
where they lived. *See e.g., Gen. Longshore v. Pate Stevedore*, 41 F.3d
668 (11th Cir. 1994) (holding that a party's belief does not satisfy the
personal knowledge requirement because '[b]elief, no matter how
sincere, is not equivalent to knowledge") (citing *Jameson v. Jameson*,
176 F.2d 58, 60 (D.C. Cir. 1949)); *United States v. Hernandez*, 693 F.2d
996 (10th Cir. 1982), cert. denied, 459 U.S. 1222 (1983) (witness who
did not know the defendant, could not testify as to the defendant's
intent to entering the United Sates); *United States v. Lyon*, 567 F.2d
777, 784 (8th Cir. 1977), cert. denied 435 U.S. 918 (1978) (Rule 602
excludes "testimony concerning matters the witness did not observe or
had no opportunity to observe.")

Second, to the extent that these witnesses will be relaying
extrajudicial statements relayed to them by others, the question arises

as to whether those declarants, i.e., the individuals who relayed their beliefs of what Howald said, had personal knowledge of what he actually said. The Advisory Committee Notes to Fed. R. Evid. 801 suggests that admissions by a party opponent *may* be introduced as evidence even though the declarant lacked personal knowledge of the matter asserted. A number of courts have concluded that to be the case. *See Grace Methodist Church v. City of Chyenne*, 451 F.3d 643, 667-668 (10th Cir. 2006) ("We have expressly held that an *admission* of a party opponent *may* be introduced in evidence even though the delcarant lacked personal knowledge of the matter asserted . . . .")

However, as the proponent of the evidence, the government has offered no specifics pertaining to the details of what these witnesses heard or from whom they heard the alleged admissions by Howald. Also unaddressed is whether the original declarant to the witness knows what they heard or is only speculating what they think they heard. The evidence demonstrates that Basin is a small town with a thriving rumor mill.

Even if the evidentiary hopscotch allows the government to

demonstrate that the declarants had sufficient personal knowledge

about what Howald said to then relay that information to these

witnesses, the testimony should still be excluded under *Fed. R. Evid.*

*403* as being unfairly prejudicial, confusing, and a waste of time.

Howald does not doubt that based on the information – true or

false – circulating in Basin, there are a number of queer, gay, and

lesbian individuals who would still claim to be on tenterhooks despite

the passage of almost three years.  However, that they are now three

years later contemplating moving from the town based on this incident,

it is both unfairly prejudicial and, frankly, confusing.  Nothing in the

evidence suggests that any of these individuals knew what was

happening on March 22, 2020.  In fact, a majority of the evidence

suggests that the victim Individual 1 was not even aware of what was

happening until hours later.

Howald's actions occurred on the eastern most edge of Basin.  The

fact that any of these individuals live west of that location, regardless

of how far west, does not render their testimony relevant to the matter

to be decided by the jury.  To allow them to testify about whatever fear

they may be feeling or grievances they may have toward Howald –

whether they know him or not – would unfairly prejudice Howald,

especially since their identities are yet unknown and the content of

what they may say is being disclosed at the 11th hour in a case the

government originally charged in 2021.

Therefore, for this multitude of reasons, this Court should

preclude the government from calling Witnesses M.J.W., M.K., and J.L.

### III.  Character Evidence versus Rebuttal Evidence

The government's trial brief argues "the defendant's motive is an

element that the government must prove in prosecutions involving

bias-motivated crimes, evidence that shows Howald's bias should be

admitted."  The government continues, "[h]ere, evidence of bias and/or

animus against lesbians is admissible because it is direct evidence of

the crime charged.  Howald does not dispute either proposition.

However, the government then goes on to address the general

prohibition against the use of character evidence and the specific

instances of conduct that could be used to prove that character trait.

Howald has a constitutional right to defend himself and to

confront the allegations levied against him by the government. The

government has acknowledged that Howald's motive, i.e., bias and/or

animus, is an element of its case. Howald must be able to rebut the

government's attempts to prove that necessary element on cross-

examination without the government arguing that Howald has then

opened the door to a witness's "knowledge of 'relevant specific instances

of the defendant's conduct.'" (Dkt. 104 at 22). Howald would direct the

Court to *Hemphill v. New York*, 142 S. Ct. 681 (2022) for guidance on

the balancing between evidence that "opens the door" versus evidence

made to support their defense against the government's case.

## IV. *Plea Agreements*

Pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v.*

*Cooper*, 566 U.S. 156 (2012), present counsel has advised Howald of all

plea offers tendered by the government in this matter. It also appears

from a review of previous counsels' files that all past offers were

conveyed to Howald. Counsel would request that the Court confirm

this with Howald at the pretrial conference and confirm that all offers

have been explained and rejected.

Respectfully submitted this 1st day of February 2023.

   /s/ Colin M. Stephens
Colin M. Stephens
STEPHENS BROOKE, P.C.
Attorney for Howald

## Certificate of Service

I, Colin M. Stephens, do hereby certify that a true and correct copy of the foregoing was served upon the following by the means indicated.

Eric Nelson Peffley. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . CM/ECF
U.S. Dept of Justice

Ethan Plaut .................................................................. CM/ECF
Assistant United States Attorney

Respectfully submitted this 1st day of February 2023.

/s/ Colin M. Stephens
Colin M. Stephens
Stephens Brooke, P.C.
Attorney for Defendant